| | |
|---|---|
| **Bethany LaSpina**, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>**SEIU Pennsylvania State Council**; **SEIU Local 668**; **SEIU Healthcare PA**; **SEIU Local 32BJ**; **Pennsylvania Joint Board of Workers United**,<br><br>　　　　　　Defendants | Case No. _____<br><br><br>**Complaint—Class Action** |

　　Bethany LaSpina is a former member of SEIU Local 668. She brings this class action on behalf of herself and others similarly situated, seeking redress for the defendants' past and ongoing violations of her constitutionally protected rights. The defendants violated Ms. LaSpina's rights by establishing an "agency shop," where Ms. LaSpina and her fellow employees were compelled to pay money to SEIU locals as a condition of their employment. And SEIU Local 668 continues to violate Ms. LaSpina's rights by diverting union dues from her paycheck—even after she clearly and unequivocally communicated

to the union and her employer that she wants to terminate her union membership and halt the payroll deduction of union-related fees.

Ms. LaSpina sues on behalf of two separate classes. The first class consists of all public employees who were forced to pay money to affiliates of SEIU Pennsylvania against their will as a condition of employment. Before the Supreme Court's ruling in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), Ms. LaSpina and her fellow class members were compelled to choose between joining an SEIU local and paying full membership dues, or declining union membership and paying a slightly reduced amount to the union in "fair share fees." *See* 71 Pa. Stat. § 575(b)–(c) (attached as Exhibit 1). Ms. LaSpina sues on behalf of all public employees who were compelled to subsidize SEIU Pennsylvania or its affiliates against their will on account of this unconstitutional agency-shop arrangement. The class includes: (1) employees who refused to join the union and paid "fair share fees"; (2) employees who joined the union because they were never informed of their constitutional right to decline union membership and pay a reduced amount in "fair share fees"; and (3) employees who reluctantly joined an SEIU local but who never would have joined or paid any money to the union had they not been compelled to work in an unconstitutional agency shop. Ms. LaSpina seeks a refund of all money that the class members unwillingly paid to these SEIU Locals as a condition of their employment—regardless of whether a class member retained or resigned his union membership.

The second class consists of all employees in bargaining units represented by affiliates of SEIU Pennsylvania who: (1) want to resign their union membership and terminate financial support of the union; (2) would choose to leave the union and terminate financial support if they were fully informed of their constitutional right to do so; or (3) would decline to opt in to union membership by providing "clear and affirmative assent" if they were fully informed of their constitutional rights under *Janus*. Some of these class members have already tried to quit the union and halt union-related payroll deductions but have been thwarted from doing so by the union. And all of these class members have been subjected to union-related payroll deductions that they have not knowingly and freely consented to. Ms. LaSpina is seeking injunctive relief on behalf of this class, and she asks the Court to enjoin SEIU Pennsylvania and its affiliates from taking money from any public employee until the union obtains a freely given and fully informed waiver of the employee's constitutional rights under *Janus*.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2. Venue is proper because at least one defendant resides or has its offices located in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Bethany LaSpina resides in Lackawanna County, Pennsylvania.

4. Defendant SEIU Pennsylvania State Council is a labor union whose offices are located at 1500 North Second Street, Suite 11, Harrisburg, Pennsylvania 17102. SEIU Pennsylvania State Council coordinates and unifies the collective political, administrative, and communication structures of all SEIU locals and districts throughout Pennsylvania. For simplicity and ease of exposition, we will refer to this defendant as "SEIU Pennsylvania" in our court filings.

5. Defendant SEIU Local 668 is a local union affiliated with SEIU Pennsylvania. Its offices are located at 2589 Interstate Drive, Harrisburg, Pennsylvania 17110.

6. Defendant SEIU Healthcare PA is a local union affiliated with SEIU Pennsylvania. Its offices are located at 1500 North Second Street, Harrisburg, Pennsylvania 17102.

7. Defendant SEIU Local 32BJ is a local union affiliated with SEIU Pennsylvania. Its offices are located at 1515 Market Street, 10th Floor, Philadelphia, Pennsylvania 19102.

8. Defendant Pennsylvania Joint Board of Workers United is a local union affiliated with SEIU Pennsylvania. Its offices are located at 1017 Hamilton Street, Allentown, Pennsylvania 18101.

## FACTS

9. Plaintiff Bethany LaSpina is employed by the Lackawanna County Public Library System. She has worked there as a full-time employee since 2015.

10. Ms. LaSpina worked in an "agency shop," where she was forced to pay money to SEIU Local 668 as a condition of her employment.

11. Ms. LaSpina opposed and continues to oppose paying money to SEIU Local 668, because she disapproves of the union's political advocacy and collective-bargaining activities, as well as the excessive salaries that the union pays to its leaders. Nevertheless, Ms. LaSpina enrolled and remained in the union because she was instructed to fill out a union-membership form at her job orientation, and she was never informed nor made aware of her right to refuse union membership and pay a reduced amount in "fair share fees."

12. Ms. LaSpina would never have joined the union had she known that she had a right to refuse union membership. Had Ms. LaSpina been informed of her right to decline union membership and pay "fair share fees," she would have chosen that option. But at no point did the union or Ms. LaSpina's employer disclose that this option was available.

13. On November 16, 2016, Ms. LaSpina sent an e-mail to Ann Buntz, the library's human resources officer, and asked whether union membership was compulsory. Ms. Buntz wrote back on November 14, 2016, and incorrectly told Ms. LaSpina that "[t]he union dues are mandatory by law." *See* Exhibit 2.

14. Ms. LaSpina's union membership was caused by a union and employer that falsely induced her to believe that she had no choice but to join as a condition of her employment, and that refused to inform her of her right to eschew union membership and pay a reduced amount in "fair share fees." The union

has never obtained Ms. LaSpina's freely given and fully informed consent to union membership, and it has never obtained her freely given and fully informed consent to pay union membership dues.

15. After the Supreme Court's ruling in *Janus*, Ms. LaSpina resigned her union membership and demanded that SEIU Local 668 stop taking money from her paycheck. On August 20, 2018, Ms. LaSpina mailed a letter to SEIU Local 668 and to her employer's human resource department that stated: "I am immediately terminating my membership in the union and all its affiliates and revoking any previous dues authorization, check off, or continuing membership form that I may have signed." *See* Exhibit 3.

16. SEIU Local 668, however, continues to take dues from Ms. LaSpina's paycheck, in defiance of her clear and explicit instructions. Mr. LaSpina's most recent paycheck on October 12, 2018, still had money deducted for union dues—nearly two months after she had informed the union and her employer that she had resigned her union membership.

## COUNT 1: UNCONSTITUTIONAL AGENCY SHOP

17. The compelled subsidy that Ms. LaSpina and her fellow class members were forced to pay to SEIU Pennsylvania and its affiliates violated their constitutional rights—regardless of whether they chose to remain in the union and pay full membership dues or resign their membership and pay "fair share fees." *See Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). Anyone who was forced to pay money to these unions against their will has suffered a constitutional injury.

18. The Supreme Court's ruling in *Janus* is retroactive. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law.").

19. SEIU Pennsylvania and its affiliates were acting under color of state law by imposing these mandatory union payments on Ms. LaSpina and her fellow class members. *See* 71 Pa. Stat. § 575(b)–(c) (attached as Exhibit 1); *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982).

20. SEIU Pennsylvania and its affiliates have committed the torts of conversion and trespass to chattels by confiscating money belonging to Ms. LaSpina and her fellow class members against their will, and they are liable to in tort and in an action for replevin. SEIU Pennsylvania and its affiliates cannot defend their tortious behavior by relying on 71 Pa. Stat. § 575, because the statute is unconstitutional and unconstitutional statutes cannot confer immunity on tortious conduct.

21. Ms. LaSpina is suing on behalf of all public employees who were compelled to subsidize SEIU Pennsylvania or its affiliates against their will. The class includes: (1) employees who refused to join the union and paid "fair share fees"; (2) employees who joined the union because they were never informed of their constitutional right to decline union membership and pay a reduced amount in "fair share fees"; and (3) employees who knew of their constitutional right to decline union membership but reluctantly joined the union only because they would have been compelled to pay "fair share fees"

had they quit, and who decided that the difference between full membership dues and "fair share fees" would not be worth the loss of their vote and voice in collective-bargaining matters.

22. Ms. LaSpina is seeking a refund for all class members in the amount they were forced to pay to SEIU Pennsylvania in violation of the Constitution.

23. Ms. LaSpina has Article III standing to bring these claims. She has suffered injury in fact because she was forced to pay money to SEIU Local 668 as a condition of her employment. The injury was caused by the unconstitutional behavior of the defendants, and the injury will be redressed by a refund of the money that the union unconstitutionally extracted from Ms. LaSpina and her fellow class members.

**COUNT 2: UNCONSTITUTIONAL GARNISHMENT OF WAGES**

24. SEIU Local 668 continues to confiscate money from Ms. LaSpina's paycheck after she informed the union and her employer that she had resigned her union membership.

25. The union's refusal to honor Ms. LaSpina's resignation and its continued garnishment of Ms. LaSpina's wages violate the Speech Clause and the Supreme Court's ruling in *Janus*. *Janus* holds that public-employee unions are forbidden to collect money from a nonmember's wages unless the employee "clearly and affirmatively consent[s] before any money is taken." *Janus*, 138 S. Ct. at 2486. Ms. LaSpina ceased to be a member of SEIU Local 668 and its affiliates when she mailed her resignation letter on August 20, 2018. Now that Ms. LaSpina has quit the union, the union is forbidden to touch her

paycheck unless it secures Ms. LaSpina's clear, affirmative, and freely given consent in advance.

26. SEIU Local 668 is committing the torts of conversion and trespass to chattels by taking and redirecting money from Ms. LaSpina's paycheck against her clear and explicit instructions.

27. The union's defiance of Ms. LaSpina's instructions to terminate her union membership and halt the payroll deductions of union dues exposes the union to punitive damages.

28. Any state law or provision in a collective-bargaining agreement that requires a public employer to continue the payroll deduction of union dues from an employee who has resigned his union membership is unconstitutional and unenforceable. *See McCahon v. Pennsylvania Turnpike Commission*, 491 F. Supp. 2d 522 (M.D. Pa. 2007). The union cannot tap Ms. LaSpina's paycheck—or any other employee's paycheck—unless it can show that Ms. LaSpina has *waived* her constitutional right to withhold payments to a public employee union, and such a waiver must be "freely given and shown by 'clear and compelling' evidence." *Janus*, 138 S. Ct. at 2486.

29. Ms. LaSpina brings this particular claim for damages against SEIU Local 668 as an individual, although she may amend her complaint and ask to represent a class if discovery reveals that affiliates of SEIU Pennsylvania have refused to honor resignation letters from other public employees.

## COUNT 3: FAILURE TO SECURE FREELY GIVEN CONSENT

30. There is an additional problem with the union's continued garnishment of Ms. LaSpina's wages: Ms. LaSpina has never provided a freely given and fully informed waiver of her constitutional right to withhold money from the union. A public employee's waiver of constitutional rights cannot be presumed, and any such waiver must be "freely given and shown by 'clear and compelling' evidence." *Janus*, 138 S. Ct. at 2486. A waiver of *Janus* rights must also be fully informed. *See id.* (citing *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938), which states that "[a] waiver is ordinarily an intentional relinquishment or abandonment of a *known* right or privilege." (emphasis added)); *see also Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). SEIU Local 668 has never informed Ms. LaSpina that she has a constitutional right to decline union membership, and the union must inform public employees of their constitutional rights and obtain a freely given waiver of those rights before it can take money from their paychecks.

31. The Court should enjoin SEIU Local 668 and all affiliates of SEIU Pennsylvania from taking money from Ms. LaSpina's paycheck or any other employee's paycheck until the employee signs a written waiver that: (a) postdates the Supreme Court's ruling in *Janus* and (b) shows that the employee knowingly and freely waived his constitutional right to resign from union membership and withhold payments to the union.

32. Ms. LaSpina is suing on behalf of all employees in bargaining units represented by SEIU Pennsylvania or its affiliates who: (1) want to resign their union membership and terminate financial support of the union; or (2) would choose to leave the union and terminate financial support if they were fully informed of their constitutional right to do so; or (3) would decline to opt in to union membership by providing "clear and affirmative assent" if they were fully informed of their constitutional rights under *Janus*. The class includes anyone who comes within the class definition at any time before the conclusion of this action.

33. Ms. LaSpina has Article III standing to bring these claims. She has suffered injury in fact because the union and her employer are taking money from her paycheck without obtaining her freely given and fully informed consent. These injuries are caused by the unconstitutional behavior of the defendants, and the injury will be redressed by an injunction that bars the collection of membership dues from any employee who has not knowingly and voluntarily waived his constitutional right to withhold payments from the union.

## CLASS ACTION ALLEGATIONS

34. Ms. LaSpina sues on behalf of two separate classes. The first class consists of all public employees who were compelled to subsidize SEIU Pennsylvania or its affiliates against their will as a condition of their employment. *See* paragraph 21. The second class consists of all employees in bargaining units represented by SEIU Pennsylvania or its affiliates who: (1) want to resign their union membership and terminate financial support of the union; or (2) would

choose to leave the union and terminate financial support if they were fully informed of their constitutional right to do so; or (3) would decline to opt in to union membership by providing "clear and affirmative assent" if they were fully informed of their constitutional rights under *Janus*. *See* paragraph 32.

35. Each of these classes is certifiable under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B), (b)(2), and (b)(3).

36. The number of persons in each of these classes makes joinder of the individual class members impractical. SEIU Local 668 alone represents 20,000 workers; if only 1% of them oppose the forced payment of union fees, that would easily clear the numerosity threshold of Rule 23(a)(1). *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) ("[N]umerosity is generally satisfied if there are more than 40 class members.").

37. There are numerous questions of law common to each class. In the first class, common questions of law include:

> a. Whether Ms. LaSpina and her fellow class members can recover the forced payments they made to SEIU Pennsylvania or its affiliates before the Supreme Court's ruling in *Janus*;
>
> b. Whether the union defendants can assert a "good faith" defense for their pre-*Janus* conduct;
>
> c. Whether and to what extent any statute of limitations might limit the class members' recovery.

38. In the second class, common questions of law include:

a. Whether the union defendants are violating the Constitution by continuing to collect union dues from employees who have never given their fully informed and freely given consent to union membership;

b. Whether the union has any legal defense for continuing to collect union dues from employees who have never given their fully informed and freely given consent to union membership.

39. Ms. LaSpina's claims are typical of the other class members. In the first class, Ms. LaSpina and her fellow class members were all forced to pay money to affiliates of SEIU Pennsylvania as a condition of employment, in violation of their constitutional rights under *Janus*. In the second class, Ms. LaSpina and her fellow class members have been subjected to union-related payroll deductions to which they have not provided their fully informed and freely given consent.

40. Ms. LaSpina adequately represents the interests of her fellow class members, and she has no interests antagonistic to either of the classes. Ms. LaSpina seeks to maximize recovery for herself and her fellow class members—a goal shared by all members of the classes—and there are no conflicts between Ms. LaSpina and the other class members.

41. Each of the proposed classes qualifies for certification under Rule 23(b)(3), because the common issues of law predominate over the questions affecting individual members, and a class action is superior means of resolving the common legal questions because all class members are subjected to the same violation of their constitutional rights, and the amount of money involved

in each individual's claim would make it burdensome for class members to maintain separate actions.

## CAUSES OF ACTION

42. Ms. LaSpina is suing the defendants under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that she is requesting.

43. Ms. LaSpina is also suing the defendants under the state-law torts of conversion, trespass to chattels, replevin, and any other state-law cause of action that offers relief for this unlawful seizure of her personal property. Ms. LaSpina invokes the supplemental jurisdiction of this court over these pendent state-law claims. *See* 28 U.S.C. § 1367.

## DEMAND FOR RELIEF

44. Ms. LaSpina respectfully requests that the court:

   a. certify a plaintiff class of all public employees who were compelled to subsidize SEIU Pennsylvania or its affiliates against their will because of the union's unconstitutional agency-shop arrangements;

   b. certify a separate plaintiff class of all employees in bargaining units represented by SEIU Pennsylvania or its affiliates who: (1) want to resign their union membership and terminate financial support of the union; or (2) would choose to leave the union and terminate financial support if they were fully informed of their constitutional right to do so; or (3) would decline to opt in

to union membership by providing "clear and affirmative assent" if they were fully informed of their constitutional rights under *Janus*.

c. declare that the defendants violated the constitutional rights of Ms. LaSpina and her fellow class members by forcing them to pay money to a public-employee union as a condition of their employment;

d. declare that the union defendants violated state tort law by garnishing and redirecting the wages of Ms. LaSpina and her fellow class members without obtaining their freely given and fully informed consent, and that any federal or state law or collective-bargaining agreement that purports to override these protections of state tort law is unconstitutional and without legal effect;

e. declare 71 Pa. Stat. § 575(b)–(c) unconstitutional because they allow public-employee unions to extract compelled payments from nonmembers as a condition of their employment, and permanently enjoin the defendants from enforcing an agency shop or entering into any collective-bargaining that establishes an agency shop;

f. order SEIU Pennsylvania and its affiliates to refund to every class member the money that they were compelled to pay to the

union as a condition of their employment, along with pre-judgment and post-judgment interest;

g. declare that SEIU Local 668 is violating Ms. LaSpina's constitutional rights by taking union membership dues from her paycheck after she had resigned her membership and clearly instructed the union and her employer to halt the payroll deductions of union-related fees;

h. declare that SEIU Local 668 is violating state tort law by garnishing and redirecting Ms. LaSpina's wages in defiance of her instructions and without first obtaining her fully informed and freely given consent;

i. order the union defendants to refund all union-related fees that they took or re-directed from Ms. LaSpina and any other employee who had previously announced their resignation from the union, along with pre-judgment and post-judgment;

j. order the union defendants to pay punitive damages to Ms. LaSpina and other class members who, at any time after Janus, clearly communicated their desire to resign from the union or instructed the union to stop taking money from their paychecks, and whose instructions were disregarded or ignored;

k.     order the union defendants to immediately honor and enforce a public employee's decision to resign from the union and withdraw financial support, regardless of the time of year that the decision is made and regardless of any law or previous agreement that purports to limit the employee's ability to halt the payment of union-related fees;

l.     declare that the union defendants are violating the Constitution by taking union-related fees from the paycheck of any public employee who has not executed a freely given and fully informed waiver of his constitutional rights under *Janus*;

m.     permanently enjoin the union defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from deducting union membership dues or other union-related fees from the paychecks of public employees unless and until that employee provides written consent to those payroll deductions that post-dates the Supreme Court's ruling in *Janus* and that includes the following language: "I understand that I am not required to join the union or pay money to the union as a condition of my employment. I further understand that a have a constitutional right to withhold all monetary payments to the union simply by resigning my union membership, and I under-

stand that the union owes me a duty of fair representation regardless of whether I remain a member of the union or give money to the union. Nevertheless, I am freely choosing to waive my constitutional rights under the Supreme Court's ruling in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), and I knowingly and freely consent to union membership and to the payroll deduction of union membership dues. I understand that I may revoke my consent to the payroll deductions of union membership dues at any time by notifying my employer's payroll department in person, in writing, or over e-mail."

n.     award costs and attorneys' fees under 42 U.S.C. § 1988;

o.     grant all other relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

|  |  |
|---|---|
| Jonathan F. Mitchell* <br> PA Bar No. 91505 <br> Mitchell Law PLLC <br> 106 East Sixth Street, Suite 900 <br> Austin, Texas 78701 <br> (512) 686-3940 (phone) <br> (512) 686-3941 (fax) <br> jonathan@mitchell.law <br><br> (additional counsel listed on following page) | /s/ Edmond R. Shinn <br> Edmond R. Shinn <br> PA Bar No. 312306 <br> Law Offices of <br> Edmond R. Shinn, Esq., Ltd. <br> 7032 Lafayette Avenue <br> Fort Washington, PA 19034 <br> (610) 308-6544 (phone) <br> (888) 237-8686 (fax) <br> eshinn@erslawfirm.com |

Walter S. Zimolong III*
PA Bar No. 89151
Zimolong, LLC
P.O. Box 552
Villanova, PA 19085
(215) 665-0842
wally@zimolonglaw.com

* *pro hac vice* application
  forthcoming

Dated: October 18, 2018

*Counsel for Plaintiff
and the Proposed Classes*