UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
SCRANTON DIVISION

| | |
|---|---|
| **Bethany LaSpina**, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**SEIU Pennsylvania State Council**, et al.,<br><br>    Defendants | Case No. 3:18-cv-02018-MEM<br><br>**Response in Opposition to Motions to Dismiss Filed by SEIU Local 668** |

## TABLE OF CONTENTS

Table of contents ............................................................................................. 1
Table of authorities ......................................................................................... 2
   I.    Ms. LaSpina Has Stated A Claim For Relief On Count One .............. 3
      A.    Ms. LaSpina Has Standing To Seek A Refund Of The Compelled Payments That She Was Forced To Pay Pre-*Janus* ............................. 3
      B.    Ms. LaSpina Is Not Seeking To Hold The Union Liable For The Library's Misstatements ........................................................................ 6
      C.    Ms. LaSpina's State-Law Refund Claims Against The Union Do Not Fall Within The Exclusive Jurisdiction Of The Pennsylvania Labor Relations Board ................................................................................... 8
   II.    Count 2 Is Not Moot Because Ms. LaSpina Has Not Received All Available Relief And The Union Cannot Moot Ms. LaSpina's Claim Through Its Voluntary Cessation Of Unlawful Conduct .......................... 9
      A.    Ms. LaSpina's Claims For Retrospective Relief Are Not Moot Because The Union Has Not Given Ms. LaSpina All Of The Retrospective Relief That She Has Claimed ....................................... 10
      B.    Ms. LaSpina's Claims For Prospective Relief Are Not Moot Because The Union's Voluntary Cessation Of Its Unlawful Conduct Cannot Moot A Claim For Declaratory Or Injunctive Relief ............... 13
   III.   Ms. LaSpina Has Standing To Seek Prospective Relief Against Future Dues Deductions ......................................................................... 16
Conclusion .................................................................................................... 17
Certificate of service .................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Campbell–Ewald v. Gomez*, 136 S. Ct. 663 (2016) ...................................... 11, 12

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) ...................... 14

*Cochetti v. Desmond*, 572 F.2d 102 (3d Cir. 1978) ........................................... 13

*Friedman's, Inc. v. Dunlap*, 290 F.3d 191 (4th Cir. 2002) .............................. 13

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ........................................................................ 14

*Gates v. City of Chicago*, 623 F.3d 389 (7th Cir. 2010) ................................... 13

*Hollinger v. Dep't of Public Welfare*, 365 A.2d 1245 (Pa. 1976) ....................... 8

*Knox v. Service Employees Int'l Union, Local 1000*, 132 S. Ct. 2277 (2012) ................................................................................................ 14

**Statutes**

71 Pa. Stat. § 575(b)–(c) .................................................................................... 8

**Rules**

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 5

Ms. LaSpina has brought three distinct claims against SEIU Local 668. First, Ms. LaSpina is seeking a refund of money that she and her fellow class members were forced to pay to the union against their will on account of the pre-*Janus* agency-shop arrangements. Second, Ms. LaSpina seeks to recover money that SEIU Local 668 continued to take from her paycheck after Ms. LaSpina resigned her union membership on August 20, 2018. Third, Ms. LaSpina seeks a classwide injunction that requires SEIU Local 668 to obtain an employee's fully informed and freely given consent post-*Janus* before diverting union fees from that employee's paycheck.

The union seeks dismissal of all three claims, and we will discuss the union's arguments in turn.

## I. Ms. LaSpina Has Stated A Claim For Relief On Count One

### A. Ms. LaSpina Has Standing To Seek A Refund Of The Compelled Payments That She Was Forced To Pay Pre-*Janus*

The union first contends that Ms. LaSpina lacks standing to challenge the union's pre-*Janus* agency-shop arrangements because she never paid agency fees to the union. *See* ECF No. 71 at 6. But that does not defeat Ms. LaSpina's standing to seek a refund of the money that she was compelled to pay to the union against her will. Ms. LaSpina was forced to pay money to SEIU Local 668 whether she joined the union or not—and those compulsory payments inflicted "injury in fact." These injuries were inflicted not only on the employees who refused to join the union and opted for "fair share fees," but also

on the employees (like Ms. LaSpina) who did not wish to pay money to the union but remained members either because they were never informed of their constitutional right to decline union membership, or because they decided that the difference between full membership dues and "fair share fees" would not be worth the loss of their vote and voice in collective-bargaining matters. So Ms. LaSpina has suffered an Article III injury on account of these agency-shop arrangements, as have all of the putative class members. That does not mean that Ms. LaSpina is legally entitled to recover this money—that goes to the merits—but it does mean that she has standing to request a ruling on the merits of her refund claim.

The union's claim that Ms. LaSpina "has not alleged that she was harmed by the pre-*Janus* fair-share fee requirement" is false. *See* ECF No. 71 at 5. Ms. LaSpina specifically alleges that she and her fellow class members "were forced to pay money to the union defendants as a condition of her employment." Second Amended Complaint, ECF No. 66 ¶ 33. Ms. LaSpina also alleged that she "opposed and continues to oppose paying money to SEIU Local 668," *id.* ¶ 13, yet she was compelled to pay either membership dues or fair-share fees to the union, even though her preference was to pay neither. That establishes "injury in fact" under Article III.

The union also suggests that Ms. LaSpina's Article III injury differs from the injury inflicted on the putative class members who declined union membership and opted for "fair share fees." *See* ECF No. 71 at 6 ("LaSpina has no standing to pursue any claim to redress the alleged injury suffered by non-

members who paid fair-share fees prior to *Janus*, even if she alleges that she was injured by Local 668 in some other way."). But that is not a reason to dismiss Ms. LaSpina's claim for lack of standing. That would be a reason to deny class certification on the ground that Ms. LaSpina's claims are insufficiently "typical" of the claims that belong to the other class members. *See* Fed. R. Civ. P. 23(a)(3). But Ms. LaSpina has not yet moved for class certification, so it is premature for this Court to decide whether Ms. LaSpina can assert the claims of absent class members who paid "fair share fees." At this point, Ms. LaSpina needs only to show that *she* has Article III standing to seek a refund of compulsory union payments that were taken from *her* paycheck before *Janus*. Whether she can represent the claims of the putative class members is an issue to be decided at the class-certification stage.

In all events, Ms. LaSpina and the putative class members have all suffered the same injury: Each class member was forced to pay money to SEIU 668 (or other affiliates of SEIU Pennsylvania) against their will and in violation of their constitutional rights. Every public employee—whether they joined the union or not—was compelled to pay at least the amount of "fair share fees" that were being imposed on non-union members, and there was no way for an employee to escape that compelled *portion* of their union payments. Whether the employee opted for full membership dues or "fair share fees" has no bearing on the relevant injury, which is the forced payment of money to a union that was extracted against the class member's will. If the union disagrees with this, then it should raise those arguments in its brief opposing class certification.

### B. Ms. LaSpina Is Not Seeking To Hold The Union Liable For The Library's Misstatements

Ms. LaSpina is not seeking to hold the union liable for her employer's misstatements, which led Ms. LaSpina to believe (incorrectly) that union membership was a mandatory condition of her employment. If the library had correctly informed Ms. LaSpina that union membership was optional, then Ms. LaSpina still would have been compelled to pay "fair share fees" to the union after she had quit. So the only damages that were inflicted on Ms. LaSpina on account of the library's misstatements were that: (1) Ms. LaSpina paid the *difference between* full membership dues and "fair share service" fees from November 14, 2016 (the date of Ms. Buntz's e-mail to Ms. LaSpina), through June 27, 2018 (the date of *Janus*); and (2) Ms. LaSpina continued to pay union membership dues between June 27, 2018 (the date of *Janus*), and August 20, 2018 (the date she resigned from the union). The union is not liable for any of those payments, and Ms. LaSpina is not seeking recovery of those payments from the union.

Ms. LaSpina is, however, seeking to recover the compelled payments that the union extracted from her paycheck before *Janus*. The union forced Ms. LaSpina—and every public employee in its bargaining units—to pay the amount of "fair share fees" that were imposed on non-union members, regardless of whether the employee joined the union or stayed out. Ms. LaSpina is suing to recover that compelled *portion* of her membership dues, on behalf

of herself and other public employees who did not wish to pay or join the union. Ms. LaSpina's refund claim against the union has nothing to do with her employer's statements that led her to believe that union membership was mandatory, and the union would remain liable to refund this money even if Ms. LaSpina's employer had told the truth. In either situation, Ms. LaSpina would have been paying *at least* an amount equal to the "fair share fees" that every employee was forced to to pay, and there was nothing that Ms. LaSpina could have done to escape these compulsory payments.

It was the union's agency-shop arrangements that violated Ms. LaSpina's constitutional rights and compelled her to pay money to the union against her will. The library's misleading e-mail caused Ms. LaSpina to pay a bit extra at the margin by causing her to remain a dues-paying member rather than a fair-share payer. But Ms. LaSpina readily acknowledges that the union is not responsible for the portion of her membership dues that was paid on account of this misunderstanding, *i.e.*, the difference between full membership dues and fair-share-service fees. The union's enforcement of its agency shops, by contrast, was undoubtedly made under color of state law, and it compelled Ms. LaSpina to pay at least the amount in "fair share service fees" that every employee was required to pay. *These* are the funds that Ms. LaSpina seeks to recover from the union, and her refund claim against the union has nothing to do with her employer's misstatements about the mandatory nature of union membership.

### C. Ms. LaSpina's State-Law Refund Claims Against The Union Do Not Fall Within The Exclusive Jurisdiction Of The Pennsylvania Labor Relations Board

Ms. LaSpina is not suing the union under Count I because she was misled into believing that union membership was a mandatory condition of her employment. She is suing the union because it enforced an unconstitutional agency shop, which compelled Ms. LaSpina to pay or join the union in violation of her constitutional rights. And she is seeking only a refund of the compulsory *portion* of her union-membership dues, *i.e.*, an amount equal to the "fair share service fees" that she was required to pay whether she joined the union or not. She is not asking the union to repay the difference between full membership dues and "fair share service fees," which she paid on account of her employer's misleading e-mail that caused her to believe that union membership was mandatory.

The union's agency shops were explicitly authorized by Pennsylvania statutes. *See* 71 Pa. Stat. § 575(b)–(c). So the compulsory union payments that were imposed on Ms. LaSpina and her fellow class members cannot possibly constitute an "unfair labor practice" under Pennsylvania law, and there no basis for relegating Ms. LaSpina's state-law refund claims against the union to the Pennsylvania Labor Relations Board. *See Hollinger v. Dep't of Public Welfare*, 365 A.2d 1245, 1249 (Pa. 1976) (only "conduct which arguably constitutes [an] unfair labor practice[]" is subject to the jurisdiction of the PLRB).

Again, Ms. LaSpina's refund claims against the union are based on its enforcement of an agency shop, and she is not seeking to recover damages from the union that were caused by anything that her employer might have done.

## II. Count 2 Is Not Moot Because Ms. LaSpina Has Not Received All Available Relief And The Union Cannot Moot Ms. LaSpina's Claim Through Its Voluntary Cessation Of Unlawful Conduct

The union received Ms. LaSpina's resignation from membership on August 21, 2018. *See* Luckert Declaration, ECF No. 72 ¶ 8. The union, however, continued to take money from Ms. LaSpina's paycheck for more than two months after Ms. LaSpina had resigned her membership, stopping only after Ms. LaSpina sued the union to enforce her constitutional rights. On October 18, 2018, Ms. LaSpina filed her original class-action complaint in this lawsuit. On October 26, 2018 — more than two months after Ms. LaSpina had resigned, and more than a week after Ms. LaSpina had retained counsel and sued the union to get it to stop tapping her paycheck — the union finally notified Ms. LaSpina's employer that it should discontinue dues deductions. *See* Luckert Declaration, ECF No. 72 ¶ 8. The union has never explained why it took more than two months to implement Ms. LaSpina's instructions to halt the payroll deductions of union dues.

Ms. LaSpina has sued the union to recover this money on behalf on herself and other employees whose paycheck were tapped after announcing their resignation from the union. *See* Second Amended Complaint, ECF No. 66

¶ 53(j). She is also seeking an injunction that compels the union to "immediately honor and enforce a public employee's decision to resign from the union and withdraw financial support." *Id.* at ¶ 53(k). Although Ms. LaSpina has brought this claim in her individual capacity, she is seeking relief for all similarly affected employees and will "ask to represent a class if discovery reveals that affiliates of SEIU Pennsylvania have refused to honor resignation letters from other public employees." *Id.* at ¶ 37.

The union is now attempting to moot Ms. LaSpina's claim by refunding the money that it unlawfully took after she had resigned her membership. The union has arranged for some of this money to be refunded by including it in Ms. LaSpina's subsequent paychecks, which are automatically placed into her bank account through direct deposit. *See* Luckert Declaration, ECF No. 72 ¶ 9. The union has also mailed Ms. LaSpina a check for $11.81—the money that it took for the dues period between August 21, 2018, and August 31, 2018. *See id.* None of this moots Ms. LaSpina's claims for prospective or retrospective relief.

    **A.**    **Ms. LaSpina's Claims For Retrospective Relief Are Not Moot Because The Union Has Not Given Ms. LaSpina All Of The Retrospective Relief That She Has Claimed**

Ms. LaSpina's demands for retrospective relief on Count 2 include: (1) a "refund [of] all union-related fees that [the union defendants] took or redirected from Ms. LaSpina *and any other employee who had previously announced their resignation from the union*, along with pre-judgment and post-judgment

[interest]," Second Amended Complaint, ECF No. 66 ¶ 53(j) (emphasis added); and (2) "costs and attorneys' fees under 42 U.S.C. § 1988," *id.* at ¶ 53(n). The union thinks it can "moot" these demands by surrendering on Ms. LaSpina's individual claim and unilaterally refunding the money that it took in violation of her constitutional rights—without paying anything in attorneys' fees and without facing any prospect of classwide relief. The union's maneuvers do not moot Ms. LaSpina's claims for retrospective relief.

First, a defendant cannot moot a plaintiff's claim by unilaterally offering the relief that the plaintiff demands. *See Campbell–Ewald v. Gomez*, 136 S. Ct. 663, 672 (2016) ("[A]n unaccepted settlement offer or offer of judgment does not moot a plaintiff's case."). That remains the case even if the defendant offers the *complete* relief that the plaintiff is seeking, or all of the *conceivable* relief that the plaintiff might obtain. If the plaintiff refuses to accept the defendant's offer, then her claim remains live. Ms. LaSpina has not accepted the union's refund offer, and she refuses to cash the check that the union has mailed to her. The union's refund effort is nothing more than an unaccepted attempt to settle Ms. LaSpina's claim, and that is insufficient to moot a claim for relief.

*Campbell–Ewald* declined to resolve whether a defendant could moot a claim if it "deposit[ed] the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *See id.* at 672. Instead, the Supreme Court left this issue open for future courts to resolve. *See id.* ("We need not, and do not, now decide whether the result would be different if a defendant deposits the full

amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount. That question is appropriately reserved for a case in which it is not hypothetical.").

The union, however, cannot take advantage of this caveat in *Campbell–Ewald* because it has not deposited the "full amount" of Ms. LaSpina's individual claim into her bank account. Only $55.18 has been placed in Ms. LaSpina's bank account through the direct deposit of her paycheck,[1] and that does not include the attorneys' fees that Ms. LaSpina is demanding—and that Ms. LaSpina is entitled to recover under 42 U.S.C. § 1988. It also does not include the $11.81 in the check that the union mailed to her house. *See* Luckert Declaration, ECF No. 72 at ¶ 11. Finally, the union cannot rely on the caveat in *Campbell–Ewald* because this Court has not yet entered judgment for Ms. LaSpina in the amount of the union's refund. *See Campbell–Ewald*, 136 S. Ct. at 672 ("We need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, *and the court then enters judgment for the plaintiff in that amount*." (emphasis added)).

If this Court were to allow the union to moot Ms. LaSpina's claim by unilaterally refunding the money that it took in violation of her constitutional rights, then any public-employee union could continuing take money from employees who resign their membership while quickly refunding the money to

---

1. *See* Luckert Declaration, ECF No. 72 at ¶ 9.

any employee who sues them. This would enable the unions to commit widescale violations of their employees' constitutional rights, while escaping any possibility of paying attorneys' fees or classwide relief on account of these constitutional violations. The amount of money involved in these disputes is often too small for an individual employee to take the time to recruit or retain a lawyer, and no lawyer will take the case if the union can escape a judgment and fee award by unilaterally refunding the money to the individual employees who sue. In all events, *Campbell–Ewald* prevents the union from buying its way out of Ms. LaSpina's claim in this manner, and none of the cases that the union cites are relevant because the union has not paid or offered to pay Ms. LaSpina's demand for attorneys' fees. She therefore has not received "the relief . . . she sought to obtain through the claim,"[2] nor has she received "as much relief as could have been awarded by the district court on the instant complaint."[3]

### B. Ms. LaSpina's Claims For Prospective Relief Are Not Moot Because The Union's Voluntary Cessation Of Its Unlawful Conduct Cannot Moot A Claim For Declaratory Or Injunctive Relief

When Ms. LaSpina filed her lawsuit on October 18, 2018, the union was *still* tapping her paycheck for membership dues even though she had resigned

---

2. *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002).
3. *Cochetti v. Desmond*, 572 F.2d 102, 105 (3d Cir. 1978). The Seventh Circuit's ruling in *Gates v. City of Chicago*, 623 F.3d 389, 413 (7th Cir. 2010), which holds that a defendant's unaccepted *tender* of complete relief moots a plaintiff's claim, is inconsistent with Campbell–Ewald and cannot be followed.

from the union nearly two months earlier. The union had not yet acknowledged or implemented her resignation from union membership. And the union had not taken any steps to halt the payroll deduction of union dues, in defiance of Ms. LaSpina's clear and explicit instructions.

The union changed its behavior *after* Ms. LaSpina sued to enforce her constitutional rights. But that does not moot Ms. LaSpina's claims for declaratory and injunctive relief. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). The union was violating Ms. LaSpina's First Amendment rights at the time she sued, and it changed its ways only after Ms. LaSpina filed her lawsuit. This is a textbook example of "voluntary cessation," and the courts have repeatedly and emphatically held that a defendant's voluntary cessation of unlawful conduct cannot moot a plaintiff's claim for declaratory and injunctive relief. *See, e.g.*, *Knox v. Service Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012); *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)

The union thinks it can escape the voluntary-cessation doctrine because it claims it was unaware of Ms. LaSpina's lawsuit when it halted her payroll deductions. *See* ECF No. 71 at 15–16; Luckert Declaration, ECF No. 72 at ¶ 12 ("Neither I nor anyone in Local 668's leadership was aware that this lawsuit had been filed or contemplated prior to receipt of the Waiver of Service and Summons on November 19, 2018."). But this is a factual question that cannot

be resolved on a motion to dismiss. Ms. LaSpina has had no opportunity to take discovery on these matters, and a court cannot make a factual finding of this sort on Rule 12(b)(6).

In all events, the union did not acknowledge and accept Ms. LaSpina's resignation from union membership until December 3, 2018—well *after* the date on which it first learned of her lawsuit. *See* Luckert Declaration, ECF No. 72 at ¶ 10 ("On December 3, the Union mailed a letter to Ms. LaSpina confirming that Local 668 had received and processed her resignation from the union, and informing her that all dues deducted after August 21, 2018 had or would be returned to her in her paycheck."). And the $11.81 refund check was not mailed to LaSpina until December 13, 2018. *See* Luckert Declaration, ECF No. 72 at ¶ 11. So the union did not fully implement or honor Ms. LaSpina's August 21, 2018, resignation from union membership until after the union had learned of the lawsuit. So the voluntary-cessation doctrine remains fully applicable to these post-lawsuit maneuvers.

And the union cites no authority to suggest that a defendant's voluntary cessation can moot a claim so long as the defendant is unaware of the lawsuit's existence. Nor is there any reason to think that ignorance of a lawsuit should allow a defendant to moot a case through its post-litigation conduct. The union's conduct was no less "voluntary" because it did not know that Ms. LaSpina had sued. For whatever reasons, the union failed to implement Ms. LaSpina's resignation and instructions for more than two months after she had

informed the union that she was quitting and demanded a halt to payroll deductions. Its decision to suddenly implement Ms. LaSpina's instructions was a "voluntary" decision that was not compelled by some outside force.

Finally, the union suggests that its voluntary cessation can moot Ms. LaSpina's claim because it is "absolutely clear" that its wrongful behavior "could not reasonably be expected to recur." ECF No. 71 at 16. That is not the case. The union and Ms. LaSpina's employer have both been sued for failing to promptly honor Ms. LaSpina's resignation from union membership, and they *could* start tapping her paycheck again if they decided to do so. This is not a situation in which forces external to the litigation make it impossible for the defendants to revert to their old ways, and a defendant's unilateral promise is not sufficient to moot a claim for declaratory or injunctive relief.

### III. Ms. LaSpina Has Standing To Seek Prospective Relief Against Future Dues Deductions

At the time Ms. LaSpina sued, both the union and her employer were diverting union fees from her paycheck. She unquestionably had standing to seek an injunction against these payroll deductions at the time she filed her lawsuit. The union's "standing" objections are really an argument for mootness. The union argues that because the defendants stopped tapping Ms. LaSpina's paycheck *after* she sued, she no longer has an Article III case or controversy with respect to Count 3.

The union is mistaken because the defendants' voluntary cessation of these unauthorized payroll deductions cannot moot Ms. LaSpina's claims for

declaratory and injunctive relief. The reasons and analysis provided in Part II are equally applicable to Ms. LaSpina's claims here.

## CONCLUSION

The motions to dismiss filed by SEIU Local 668 should be denied.

Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| TALCOTT J. FRANKLIN* | JONATHAN F. MITCHELL* |
| SHANNON W. CONWAY* | PA Bar No. 91505 |
| Talcott Franklin P.C. | Mitchell Law PLLC |
| 1920 McKinney Avenue, 7th Floor | 106 East Sixth Street, Suite 900 |
| Dallas, Texas 75201 | Austin, Texas 78701 |
| (214) 642-9191 | (512) 686-3940 (phone) |
| (214) 709-6180 | (512) 686-3941 (fax) |
| tal@talcottfranklin.com | jonathan@mitchell.law |
| sconway@talcottfranklin.com | |
| | |
| EDMOND R. SHINN | WALTER S. ZIMOLONG III* |
| PA Bar No. 312306 | PA Bar No. 89151 |
| Law Offices of Edmond R. Shinn | Zimolong, LLC |
| 7032 Lafayette Avenue | P.O. Box 552 |
| Fort Washington, PA 19034 | Villanova, PA 19085 |
| (610) 308-6544 (phone) | (215) 665-0842 |
| (888) 237-8686 (fax) | wally@zimolonglaw.com |
| eshinn@erslawfirm.com | |

\* admitted *pro hac vice*

Dated: October 18, 2018

*Counsel for Plaintiff
and the Proposed Classes*

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8

I certify that this brief, excluding the caption page, tables, and signature block, includes 3,840 words, as determined by the word count feature of the word processing program used to prepare the brief.

   /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff
and the Proposed Classes*

## CERTIFICATE OF SERVICE

I certify that on February 25, 2019, I served this document through CM/ECF upon:

Scott A. Kronland
P. Casey Pitts
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
(415) 421-7151
skronland@altber.com
cpitts@altber.com

Martin W. Milz
Samuel L. Spear
Spear Wilderman, P.C.
230 South Broad Street, 14th Floor
Philadelphia, Pennsylvania 19102
(215) 732-0101
mmilz@spearwilderman.com
sspear@spearwilderman.com

*Counsel for Defendants SEIU Pennsylvania State Council and Pennsylvania Joint Board of Workers United*

Bruce M. Ludwig
Lauren M. Hoye
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, Pennsylvania 19103
(215) 656-3600
bludwig@wwdlaw.com
lhoye@wwdlaw.com

*Counsel for SEIU Healthcare PA*

Katchen Locke
Associate General Counsel
SEIU Local 32BJ
25 West 18th Street
New York, New York 10011
(212) 539-2941
klocke@seiu32bj.org

*Counsel for Defendant SEIU Local 32BJ*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff
and the Proposed Classes*