**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BETHANY LASPINA,** | : | |
| **on behalf of herself and others** | | |
| **similarly situated,** | : | |
| | | |
| **Plaintiffs,** | : | |
| | | **CIVIL ACTION NO. 3:18-2018** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **SEIU PENNSYLVANIA STATE** | : | |
| **COUNCIL, _et al.,_** | | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Pending before the court are the motions to dismiss the second amended complaint ("SAC"), (Doc. 66), of plaintiff Bethany LaSpina filed by defendants SEIU Local 668 ("Local 668"), (Doc. 70), and Scranton Public Library ("SPL"), (Doc. 88). Defendants' motion are filed pursuant to Fed.Civ.P. 12(b)(1) for lack of jurisdiction and lack of standing, and for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Local 668 and SPL contend that plaintiff lacks standing with respect to her claim in Count 1since she did not pay fair-share fees, she did not pay union dues and, that she lacks standing to pursue class action claims on behalf of former fair-share fee payers and union members who allegedly joined the union because of the fair-share fee requirement. Local 668 and SPL also contend that since plaintiff already received all available relief for her claims in Count 2, regarding post-resignation dues, and since deduction for dues cannot re-start without her written authorization, these claims should be

1

dismissed as moot. Further, Local 668 and SPL argue that plaintiff lacks standing to pursue her claim in Count 3, in which she seeks an order requiring the union to obtain post-<u>Janus</u> authorizations from its members before receiving future due since plaintiff no longer has an actual controversy before the court regarding this claim. For the reasons that follow, Local 668's and SPL's motions to dismiss under Rule 12(b)(1) will be **GRANTED** and, plaintiff's federal claims against these defendants will be **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND[1]

Plaintiff is an employee of SPL, which is a Pennsylvania non-profit corporation and represented in collective bargaining by Local 668. Plaintiff joined Local 668 in October 2015 and was a dues-paying member of this union until she resigned her membership in August 2018. In her resignation letter, plaintiff also revoked her prior authorization for SPL to deduct from her pay dues for Local 668. In her SAC, plaintiff alleges that she became a member of Local 668 because "she was instructed [by SPL] to fill out a union-membership form at her job orientation," and that SPL's human

---

[1]Since the court stated the background of this case in its August 29, 2019 Memorandum granting the motions to dismiss plaintiff's SAC, (Doc. 66), of union defendants, SEIU Local 32BJ, (Doc. 46), the Pennsylvania Joint Board of Workers United, (Doc. 52), and SEIU Healthcare PA, (Doc. 59), and in its September 11, 2019 Memorandum granting the motion to dismiss of State Council, it will not be fully repeated herein. (Docs. 98 & 100).

The court also notes that at times it will refer to Local 668 and SPL, collectively, as "defendants."

resources officer "incorrectly told [her] that … 'union dues are mandatory by law.'" Plaintiff states that she would have chosen to be a fair-share fee payer as opposed to a union member, if SPL had made her aware of that option.

After the Supreme Court decided <u>Janus</u>[2], Local 668 notified SPL and its other public employers and directed them to immediately stop requesting or deducting fair-share fees from employees who were not members of Local

---

[2]<u>Janus v. American Federation of State, County, and Municipal Employees, Council 31</u>, — U.S. —, 138 S. Ct. 2448 (2018).

As a backdrop, prior to <u>Janus</u>, unions representing government employees could use "agency shop" clauses in collective bargaining agreements "which required every employee represented by a union, even those who declined to become union members for political or religious reasons, to pay union dues." <u>Diamond v. Pennsylvania State Education Association</u>, --- F.Supp.3d ----, 2019 WL 2929875, *1-2 (W.D.Pa. July 8, 2019). In <u>Abood v. Detroit Board of Education</u>, 431 U.S. 209, 97 S.Ct. 1782 (1977), the Supreme Court "held that the charges were constitutional to the extent they were used to finance the union's collective-bargaining, contract-administration, and grievance activities." <u>Id</u>. at *2. "[T]he Court also concluded that the agency-shop clause and fees were unconstitutional insofar as the clause compelled non-member teachers to pay fees to the union that supported the union's political activities." <u>Id</u>. Subsequently, in <u>Janus</u>, the Supreme Court overruled <u>Abood</u>, and held that "a state law requiring non-union-member public employees to pay fees to the union to compensate the union for costs incurred in the collective-bargaining process" was unconstitutional. <u>Id</u>. at *3. Thus, the Court in <u>Janus</u>, 138 S. Ct. at 2486, held that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." Further, the Court held that "[n]either an agency fee nor any other payment to the union may be deducted from a non[-]member's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." <u>Id. See also</u> <u>Babb v. California Teachers Association</u>, 378 F.Supp.3d 857, 867 (C.D.Ca. 2019) (In <u>Janus</u>, the Supreme Court "overruled <u>Abood</u> [ ] and its progeny, holding that no form of payment to a union, including agency fees, can be deducted or attempted to be collected from an employee without the employee's affirmative consent.") (citing <u>Janus</u>, 138 S.Ct. at 2486).

668. (*See* Declaration of Claudia Lukert, Local 668's Chief of Staff, Doc. 72, ¶'s16-17). Following Local 668's instruction, SPL stopped deducting fair-share fees from employees who were not members of Local 668 and SPL has not deducted any such fees since that time. As such, public employees represented by Local 668 may now either join the union and pay dues or decline union membership and pay nothing. (Doc. 72, ¶17).

After plaintiff sent her letter to Local 668 on August 21, 2018 resigning her membership in the union, Local 668 sent a letter to SPL dated October 26, 2018, advising SPL that plaintiff submitted a request to withdraw from the union and requested SPL to discontinue payroll dues deductions for her effective immediately. (Doc. 90-1). Local 668 processed plaintiff's resignation and sent SPL the letter before it was aware of plaintiff's instant lawsuit. (Doc. 72, ¶'s 8, 12). Local 668 then directed SPL to refund plaintiff the membership dues that were deducted from her pay after her resignation, and she was issued a refund of $55.18 which was included in her November 2018 paycheck. (Doc. 72, ¶9). Local 668 then advised plaintiff on December 3, 2018 that her resignation from the union was processed and her status changed to non-member as of August 21, 2018. Plaintiff was also advised that she would receive a refund of any dues deducted after her resignation. (Doc. 72, ¶'s 8, 10-11). On December 13, 2018, Local 668 sent plaintiff a check in the amount of $11.81 for dues deducted for the period from August 21 through August 31, 2018. After SPL received the October 2018 letter from Local 668, it did not deduct any more dues from plaintiff's pay. (Id.).

In this case, plaintiff essentially claims that she was unconstitutionally required to pay union dues. She raises three federal claims in her SAC pursuant to 42 U.S.C. §1983.[3] In Count 1, a putative class action claim, plaintiff alleges that she and other public employees were employed in "unconstitutional agency shops" before the Court decided Janus because non-union members were required to pay fair-share fees for union representation. She alleges that "the union defendants violated the constitutional rights of the plaintiff class members by tapping their paychecks against their will." Plaintiff seeks a refund of the money she and the putative class members were "compelled to pay the union" based on the pre-Janus

_____

[3]The facts alleged in plaintiff's SAC must be accepted as true in considering defendant SPL's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

A Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." Diamond, — F.Supp.3d —, 2019 WL 2929875, *6 (citation omitted). "This challenge 'allows the defendant to present competing facts,' and the court does not assume that the plaintiff's allegations [in the complaint] are true." *Id*. (Internal citations omitted). Plaintiff has the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *Id*. "However, the party alleging that a claim has become moot due to a change in a defendant's conduct bears the burden to demonstrate mootness." Molina v. Pennsylvania Social Service Union, --- F.Supp.3d —-, 2019 WL 3240170, *5 (M.D.Pa. July 18, 2019) (citation omitted).

Local 668 and SPL have presented competing facts and their motions to dismiss, (*see* Doc. 72 and Exhibits, Doc. 72-1 to 72-5), insofar as they are based on Rule 12(b)(1), must be treated as a factual attack on the court's subject-matter jurisdiction. *See* Diamond, 2019 WL 2929875, *6. Thus, "when evaluating [Local 668's and SPL's] 12(b)(1) grounds for dismissal, the Court may consider [SPL's and Local 668's] [evidence]." *Id. See also* Gould Elecs. v. United States, 220 F.3d 169, 176-77 (3d Cir. 2000).

fair-share fee requirement.

In Count 2, plaintiff alleges that Local 668 and SPL violated her constitutional rights and state law by failing to stop deductions for dues from her pay after she resigned from the union. Specifically, plaintiff alleges that her First Amendment rights were violated when Local 668 continued to take dues from her paycheck after she resigned her membership in the union, based on the <u>Janus</u> decision, and after she told SPL to "halt the payroll deduction of union-related fees." Count 2 is brought solely on plaintiff's behalf.

In Count 3, plaintiff alleges that the receipt of membership dues by all of the union defendants is unconstitutional until the unions obtain affirmative consents from employees authorizing them to deduct dues pursuant to <u>Janus</u>, and obtain new agreements to allow them to deduct dues from the pay of their members. Count 3 is brought on behalf of current and future union members and plaintiff seeks injunctive relief prohibiting union defendants from receiving any dues without post-<u>Janus</u> agreements and, she seeks the court to require union defendants to include specific language in the agreements.

As relief, plaintiff seeks a refund of all of the dues she paid to Local 668. Plaintiff also seeks to require the defendant unions to refund all dues and fees they received from her. Additionally, plaintiff seeks punitive damages for herself and for members of all defendant unions who resigned from the unions or requested that the unions stop taking dues or fees after the <u>Janus</u> decision and who continued to have dues or fees withdrawn from their pay.

Further, plaintiff seeks relief under the Declaratory Judgment Act, 22

U.S.C. §2201, requesting a permanent injunction enjoining defendants from accepting dues or fees unless the employees have given their consent to join the unions. In particular, plaintiff seeks injunctive relief on behalf of a putative class of current and future union members prohibiting the union defendants from receiving any membership dues without the new post-Janus agreements and requiring the union defendants to include specific language in the new agreements.

Plaintiff also raises state law claims against all defendants for conversion, trespass to chattels, replevin, restitution, and unjust enrichment.

In addition to Local 668 and SPL, the only remaining defendant in this case was Lackawanna County Library System.[4]

Plaintiff is proceeding on her SAC filed January 28, 2019. (Doc. 66). On February 11, 2019, Local 668 filed its motion to dismiss plaintiff's SAC in its entirety. (Doc. 70). On May 3, 2019, SPL filed its motion to dismiss plaintiff's SAC in its entirety. (Doc. 88). Both defendants argue, in part, that there is no live controversy between them and plaintiff regarding any of her federal claims against them and that she lacks standing to assert her claims. The motions to dismiss of Local 668 and SPL have been briefed. (Docs. 71, 79 & 81; Docs.

---

[4]The court notes that since the plaintiff failed to serve defendant Lackawanna County Library System with her SAC, she was directed to serve this defendant within 14 days of the date of the court's September 11, 2019 Order. Otherwise this defendant would be dismissed from this case pursuant to Fed.R.Civ.P. 4(m). On September 25, 2019, the plaintiff filed a notice of voluntary dismissal of Lackawanna County Library System, (Doc. 102), pursuant to Fed.R.Civ.P. 41(a)(1)(A)(I).

90, 93 & 94).

The court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiff avers violations of her rights under the U.S. Constitution. The court can exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1337. Venue is appropriate in this court since the alleged constitutional violations occurred in this district. *See* 28 U.S.C. §1391.

## II. DISCUSSION

In Count 1, plaintiff raises claims based on the pre-Janus requirement that non-union members had to pay fair-share fees to Local 668. Plaintiff seeks a refund of fair-share fees paid by non-union members prior to Janus and injunctive relief prohibiting the future collection of fair-share fees. She also seeks a refund of money paid by union members, including herself, who allegedly chose to join Local 668 because of the pre-Janus fair-share fee requirement. Further, plaintiff seeks a refund of the dues she and other union members paid based on alleged misrepresentations that they were required to join the unions. Thus, plaintiff alleges that since she was forced to join the union and pay dues, she has standing to seek recovery of the dues she and other union members paid Local 668 prior to Janus.

In her SAC, plaintiff alleges that she was opposed to making any payments to Local 668 and that she only joined the union and paid due because she worked in an agency shop and SPL misrepresented to her that

8

union membership was mandatory. (Doc. 66 at ¶'s 12-16). She also alleges that she was compelled to pay either union membership dues or fair-share fees, and that this was why she joined the union and paid dues. Plaintiff argues that she "suffered injury in fact from the pre-<u>Janus</u> agency-shop arrangements because she was forced to pay the union [dues] as a condition of her employment — either by joining the union and paying dues or by declining union membership and paying 'fair-share fees.'" (Doc. 93 at 4). She contends that her constitutional right to withhold money from the union, which she did not support, was denied, and that this inflicted an "injury in fact" upon her that can be redressed by a refund of the money that she was allegedly forced to pay Local 668 against her will.

Further, plaintiff argues that the issue of whether she should be allowed to represent agency-fee employees and employees who joined the union but were aware of their right to decline union membership goes to whether one of her proposed classes should be certified under Rule 23 and is not a standing issue.

Local 668 and SPL argue that Count 1 of the SAC, which is based upon the pre-<u>Janus</u> fair-share fee requirement,[5] should be dismissed since plaintiff

_____

[5]As the court noted in its August 29, 2019 Memorandum, fair share fees are charges non-union member employees had to pay unions prior to <u>Janus</u> to finance the union's collective bargaining activities. *See* <u>Diamond</u>, — F.Supp.3d —, 2019 WL 2929875, *2 ("In accordance with <u>Abood</u>, Pennsylvania enacted its own agency-shop statute for public employees in 1988, 71 Pa. Stat. §575."). In <u>Janus</u>, 138 S.Ct. at 2459, 2486, the Supreme Court held that it was a violation of the First Amendment for public sector unions to require non-members to pay fair share fees as a condition of public

lacks standing to assert a claim on behalf of fair-share fee payers because she never paid fair-share fees, i.e., she did not suffer any harm regarding such fees. Defendants also argue that plaintiff lacks standing to assert a claim on behalf of union members who allegedly joined the union because of a fair-share fee requirement since she did not allege that this is why she joined the union, and "she was never even aware that such a requirement existed." (Doc. 94 at 5).

Initially, as the court explained in its August 29, 2019 Memorandum, 2019 WL 4081900, issues of standing are antecedent to issues of class certification. Thus, the court will consider defendants' contentions that plaintiff lacks standing to pursue relief on behalf of other SPL employees and members of her proposed classes in regards to their instant motions to dismiss.

In deciding whether plaintiff has standing to assert her claims in Count 1 seeking a refund of dues and fees plaintiff and putative class members were compelled to pay Local 668, she must allege that she was harmed by the pre-Janus fair-share fee requirement. "[Rule] 12(b)(1) governs a motion to dismiss for lack of standing, since 'standing is a jurisdictional matter.'"

_____

employment. Following Janus, Pennsylvania's statute allowing the collection of "fair share" fees from non-members by unions is no longer enforceable. *See* Hartnett v. Pennsylvania State Education Association, — F.Supp.3d —, 2019 WL 2160404 (M.D.Pa. May 17, 2019). In Diamond, 2019 WL 2929875, at *15, the court held that the issue of "whether Union Defendants could constitutionally collect fair-share fees from Plaintiffs pursuant to Section 575" "was mooted by the intervening Janus decision, which held that fair-share fees are unconstitutional".).

Polanco v. Omnicell, Inc., 988 F.Supp.2d 451, 459 (D.N.J. 2013) (citation omitted). "Standing 'is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution.'" *Id.* (citation omitted). "A plaintiff must establish his or her standing to bring a case in order for the court to possess jurisdiction over his or her claim. *Id.* (citation omitted).

"Article III governs constitutional standing and limits [the court's] jurisdiction to actual "cases or controversies." Neale v. Volvo Cars of North America, LLC, 794 F.3d 353, 358-59 (3d Cir. 2015). "Article III requires a plaintiff to demonstrate '(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Id*. (citations omitted). *See also* Anjelino v. N.Y. Times Co., 200 F.3d 73, 88 (3d Cir. 2000) ("Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent, that the challenged action is causally connected to the actual or imminent injury, and that the injury may be redressed by the cause of action."). "Standing requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for each claim he seeks to press.'" Neale, 794 F.3d at 359 (citation omitted). "Th[e] 'case or controversy' requirement encompasses, *inter alia*, two doctrines that are relevant to the present dispute: mootness and standing." Diamond, 2019 WL 2929875, at *13 (citations omitted). "The parties must maintain a personal stake in the resolution of the dispute throughout the litigation", and "[t]herefore, 'if

developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot.'" Molina, 2019 WL 3240170, *5 (internal citations omitted).

Defendants argue that plaintiff lacks standing with respect to her pre-Janus fair-share fee requirement claim against them in Count 1 since "[she] has failed to allege she was injured by Local 668's receipt of fair-share fees", and since she has only alleged that she was a union member and "[she] paid membership dues, not fair-share fees." Defendants also state that "[plaintiff] has not alleged she ever paid fair-share fees or was even aware of that option." (Doc. 94 at 6) (citing SAC, Doc. 66, ¶'s 13-15). Thus, defendants contend that plaintiff cannot pursue "any claim to redress the alleged injury suffered by non-members who paid fair-share fees" since she herself was a union member and not subjected to such fees. (Doc. 90 at 10-11) (citing Blum v. Yaretsky, 457 U.S. 991, 999 (1982) ("[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.").

The court finds that since plaintiff was a dues-paying member of Local 668 during all relevant times, and not a fair-share fee payer, she lacks standing to seek a refund of fees paid by non-union members or fair-share fee payers. See Neale, 794 F.3d at 359 (plaintiff must demonstrate that she has standing for each claim she asserts) (citation omitted). See also Friends of the

12

Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 185 (2000) ("[P]laintiff must demonstrate standing separately for each form of relief sought."). There is simply no causal connection between the pre-Janus fair-share fee requirement which non-union members were compelled to pay Local 668 and the union membership dues that plaintiff paid to Local 668, and any injury plaintiff allegedly suffered by her payment of dues was clearly not caused by the pre-Janus fair-share fee requirement. As such, plaintiff lacks standing to seek retrospective relief based on this fee requirement.

Insofar as plaintiff argues that part of her membership dues should be refunded because if she had not joined Local 668 she would have been made to pay fair-share fees, the court has no standing to redress this speculative claim since plaintiff suffered no injury due to the fair-share fee requirement as she was a dues paying union member and she did not pay fair-share fees. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, 528 U.S. at 180-81 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992)). *See* Finkelman v. NFL, 810 F.3d 187, 193 (3d Cir. 2016) (With respect to the first element, injury in fact, it must be "particularized," i.e, "an injury must 'affect the plaintiff in a personal and individual way.'") (citation omitted).

Further, there is no merit to plaintiff's contention that since she alleged she was compelled to pay dues to Local 668 because SPL told her that she had to join the union, she has standing to challenge all compulsory payments to Local 668. As the Third Circuit explained in <u>Finkelman</u>, 810 F.3d at 198, "[t]he causation element of standing requires a plaintiff to allege facts sufficient to show that his or her injury is 'fairly traceable' to the alleged wrongdoing of the defendant", and "at a minimum", the alleged wrongdoing of the defendant must be a "'but for' cause of the plaintiff's injury." (internal citations omitted). As defendants explain, (Doc. 94 at 8), "[b]y [plaintiff's] own admission, the wrongful conduct alleged in Count 1 — Local 668's receipt of fair-share fees— did not cause her to pay membership dues [to the union]."

Additionally, as SPL states, plaintiff has no standing to assert a claim in Count 1 on behalf of union members who allegedly joined the union because of the fair-share fee requirement since she has not alleged that she was such a union member and she was not injured by this requirement. Rather, plaintiff alleges that SPL misrepresented to her that she had to join the union and she alleges that if she had "been informed of her right to ... pay 'fair share fees,'" she would not have joined the union or remained a union member. (Doc. 66, ¶'s14, 16). Thus, as defendants state, "[b]y her account, [plaintiff] was never even aware fair-share fees existed." Also, as this court held in its August 29, 2019 Memorandum, "standing cannot be predicated on an injury which the plaintiff has not suffered, nor can it 'be acquired through the back door of a class action.'" (Doc. 98, at 14) (quoting <u>In re Franklin Mut.</u>

Funds Fee Litigation, 388 F.Supp.2d at 461).

Additionally, as SPL points out, its alleged past misrepresentations to plaintiff about her rights to join or not join the union are not sufficient to create a live controversy. SPL relies upon McNair v. Synapse Group Inc., 672 F.3d 213 (3d Cir. 2012). In McNair, id. at 223-25, the Third Circuit held since plaintiffs were not customers of defendant and not currently subject to its alleged deceptive practices, and since plaintiffs were now aware of defendant's alleged deceptive techniques, the court lacked jurisdiction to grant injunctive relief to plaintiffs as "there is no reasonable likelihood that they will be injured by those techniques in the future."[6]

There is no controversy that needs adjudication with respect to plaintiff's claim in Count 1 regarding the pre-Janus fair-share fee requirement. Thus, Local 668's and SPL's Rule 12(b)(1) motions to dismiss plaintiff's claims in Count 1 seeking retrospective relief based on the pre-Janus fair-share fee

---

[6]The court notes that plaintiff cannot hold Local 668 liable for the alleged misrepresentation of SPL, contained in Count 1, that she was required to join the union and pay dues since it is not alleged to have been personally involved with this conduct. It is well-settled that liability under section 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. See Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (overturned on other grounds) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiff does not allege that Local 668 told her union membership was mandatory and Local 668 was not alleged to have been involved when plaintiff was instructed at her orientation with SPL to fill out a union membership form. (Doc. 66 ¶'s 13-15). Nor does plaintiff allege that Local 668 directed SPL to make the alleged misrepresentation to her about union membership. Further, plaintiff does not allege that Local 668 was even aware of the alleged misrepresentation made by SPL.

requirement will be granted for lack of jurisdiction. As such, Count 1 against Local 668 and SPL will be dismissed with prejudice pursuant to Rule 12(b)(1).[7]

Next, defendants argue that plaintiff cannot assert a constitutional claim against them under §1983 since she fails to establish that they were state actors acting under color of state law. As stated, SPL is a Pennsylvania non-profit corporation, and not a municipal entity. Local 668 is a private, non-governmental entity. As such, defendants move to dismiss the §1983 claims against them under Rule 12(b)(6) because plaintiff failed to plausibly plead that they are state actors.

To state a claim under [§1983](), a plaintiff must meet two threshold requirements. She must allege: 1) that the alleged misconduct was committed

---

[7]As Local 668 also recognizes, the court notes that although "statutory and contractual provisions authorizing fair-share requirements are no longer enforceable after Janus", see Diamond, 2019 WL 2929875, at *14, the good-faith defense would apply to relieve SPL and Local 668 from liability under §1983 since they reasonably relied on the constitutionality of Pennsylvania's fair-share fee law, §575, and the Supreme Court's decision in Abood which permitted such fees. See id. at *25-29 (citing, in part, Akers, 376 F.Supp.3d at 571-72 ("explaining that the plaintiffs could assert a good-faith defense because they complied with and relied on presumptively-valid state law and controlling Supreme Court precedent"; Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1006 (D. Alaska) ("discussing the inequity of holding the union defendants liable for pre-Janus fair-share fees when they collected the fees in accordance with state law and then-binding Supreme Court precedent"); Akers v. Maryland State Educ. Assoc., 376 F.Supp. 3d 563 (D.Md. 2019). In Diamond, 2019 WL 2929875, at *21, the court also held that plaintiffs' claims for declarative and injunctive relief with respect to fair-share fees were moot based on the Janus decision and union defendants' compliance with it. (citing collection of cases). See also Hartnett, — F.Supp.3d —, 2019 WL 2160404, *6-7.

by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). *See also* Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (To state an actionable claim under §1983, plaintiff must prove that someone deprived her of a constitutional right while acting under the color of state law.). "[M]erely private conduct, no matter how discriminatory or wrongful" does not subject a defendant to liability under §1983. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49, 119 S.Ct. 977 (1999).

However, "[a] private actor [such as SPL] can be considered a state actor in one of two ways." Boyer v. Mohring, 994 F.Supp.2d 649, 657 (E.D.Pa. 2014). As the court in Boyer, *id*., explained:

> "The first category involves an activity that is significantly encouraged by the state or in which the state acts as a joint participant." Dickerson v. DeSimone, Inc., 2011 WL 3273228, at *2 (E.D.Pa. Aug. 1, 2011) (quoting Leshko v. Servis, 423 F.3d 337, 340 (3d Cir. 2005)). "The second category of cases involves an actor that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management." *Id*. In order to establish the requisite level of joint participation and collaboration, a plaintiff must aver the existence of a "pre-arranged plan [between the [state actor] and a private entity] by which the [state actor] substituted the judgment of [a] private part[y] for their own official authority." Cruz v. Donnelly, 727 F.2d 79, 80 (3d Cir. 1984). The Third Circuit has noted that "the critical issue ... is whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." Cruz, 727

F.2d at 82.

*See also* Borrell v. Bloomsburg Univ., 870 F.3d 154, 160 (3d Cir. 2017) (to determine if the defendant is a state actor, the issue is whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.").

Defendants contend that they cannot be considered state actors under either category. First, they state that their alleged conduct cannot be considered activity "significantly encouraged by the state" or in which the state acted as a joint participant since "at all relevant times union membership was optional under Pennsylvania law and it was unlawful for either [SPL] or Local 668 to coerce [plaintiff] into becoming a union member." (Doc. 90 at 12-13) (citing 43 Pa.C.S.A. §1101.401). They also state that plaintiff does not allege that Pennsylvania forced or encouraged, or jointly participated in, their alleged conduct. Thus, defendants state that since the alleged conduct is "contrary to the relevant policy articulated by the state", plaintiff fails to state a cause of action against them under §1983. (Id.) (quoting Lugar, 457 U.S. at 940).

Secondly, defendants contend that plaintiff has not alleged that they "acted on behalf of the state" regarding her membership in Local 668, and that their "management practices cannot be characterized as any kind of state function." (Id. at 13). Further, SPL states that since plaintiff's allegations that it forced her to join Local 668 by misrepresenting that union membership was mandatory or failed to advise her that she did not have to join the union was conduct that violated state law, she cannot show that SPL is "entwined with

government policies or management."

In her SAC, plaintiff has alleged that SPL acted under color of state law by enforcing the unconstitutional agency shops permitted by Pennsylvania law and that SPL is liable under §1983 on the same basis as Local 668 is. In Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 942 n.23, 102 S.Ct. 2744 (1982), "the Supreme Court held that private parties using a process established by state statute can be considered state actors for purposes of §1983." Crockett, 367 F.Supp.3d at 1005. *See also* Manhattan Cmty. Access Corp. v. Halleck, —— U.S. ——, 139 S. Ct. 1921, 1928 (2019) (Supreme Court held that one of the "few limited circumstances" where a private entity qualifies as a state actor under §1983 is "when the government acts jointly with the private entity"). Plaintiff has alleged that although Local 668 and SPL were private defendants, they were acting under color of state law, namely, Pennsylvania's law authorizing the agency-shop arrangements and the payment by non-union members of fair-share fees, 71 Pa.C.S.A. §575. Plaintiff states that SPL forced her to pay money to Local 668 based on the stated policy that was "imposed under color of state law because it was explicitly authorized by Pennsylvania's statues."

Therefore, plaintiff has sufficiently alleged that Local 668 and SPL were state actors and her claims against them under §1983 will not be dismissed on this basis pursuant to Rule 12(b)(6). *See* Leshko, 423 F.3d at 340 ("Determining state action in th[e] [second] category of cases consists of asking whether the actor is so integrally related to the state that it is fair to

impute to the state responsibility for the action.").

In Count 2, plaintiff alleges that membership dues continued to be deducted from her pay after she "mailed a letter to SEIU Local 668 and to [SPL's] human resources department" resigning her membership in Local 668 and revoking her prior authorization to deduct dues from her pay. (Doc. 66, ¶'s 17-18). Plaintiff seeks retrospective monetary relief on her own behalf for the dues that were deducted from her paycheck after she resigned from Local 668.

Specifically, in Count 2, plaintiff seeks declaratory and injunctive relief. She requests the court to "declare that [SPL] violated [her] constitutional rights" by taking union membership dues from her paycheck after she had resigned her membership [from Local 668]." (Doc. 66, ¶53(h) and (I)). Plaintiff also requests the court to "order the defendants to immediately honor and enforce a public employee's decision to resign from the union and withdraw financial support." (Id., ¶ 53(k)). She seeks prospective relief enjoining Local 668 from deducting dues in the future from her and other employees who resigned from the union.

Defendants argue that the court lacks subject matter jurisdiction over Count 2 since plaintiff already received all of the relief potentially available regarding her claim for retrospective monetary relief. They state that "[b]efore receiving notice of this lawsuit, Local 668 instructed [SPL] to cease deducting membership dues from [plaintiff's] wages, and [SPL] has already stopped deductions and refunded all dues deducted subsequent to [plaintiff's]

resignation date." (Doc. 90 at 15; Doc. 90-1; Doc. 72, ¶'s 9-11). Defendants state that since all of the plaintiff's money for dues has been refunded after her resignation, she can not obtain any further retrospective relief and she does not have a live controversy.

Thus, defendants contend that the retrospective relief plaintiff seeks in Count 2 is moot and that there is no live controversy regarding her claim since they have shown that "Local 668 accepted [plaintiff's] resignation, terminated dues deductions, and refunded the dues received from [plaintiff] following her resignation." (Doc. 90 at 16-17; Doc. 72, ¶'s 9-11). As such, defendants state that plaintiff no longer has anything to gain from the court's declaration that the past deductions for dues from her pay violated her constitutional rights.

Further, defendants state that plaintiff's request for prospective relief seeking the court to order Local 668 and SPL to honor her decision to resign from the union and to stop deducting dues from her paycheck is moot since Local 668 already accepted plaintiff's request to resign in August 2018, and then in October 2018, before learning of plaintiff's lawsuit, Local 668 directed SPL to discontinue the payroll deductions for union dues for plaintiff "effective immediately." (Doc. 90-1; Doc. 72). SPL then indicates that it complied with Local 668's directive and ceased deducting dues from plaintiff's pay.

Thus, Local 668 and SPL argue that plaintiff's claims for prospective and retrospective relief against them in Count 2 are moot and should be dismissed under Rule 12(b)(1).

Plaintiff counters by stating that she resigned her membership in Local

668 on August 21, 2018 but Local 668 continued to have SPL deduct dues from her paycheck for two more months until October 26, 2018, which was after she filed her original complaint in this action on October 18, 2018. (Doc. 72, ¶8, Doc. 72-2). As such, plaintiff contends that she has standing to sue to recover the dues deducted from her paycheck and from the paychecks of other employees after they resigned their membership from the union. Plaintiff points out that she is also seeking an injunction to compel SPL to "immediately honor and enforce a public employee's decision to resign from the union and withdraw financial support." (Doc. 66 at ¶53(k)). Plaintiff argues that her claims for prospective and retrospective relief are not moot even though Local 668 refunded her money deducted after her resignation and, that she has not received all of the relief she has claimed on behalf of herself and other employees who had dues taken from their pays after they resigned from the union, including pre and post-judgment interest as well as costs and attorneys' fees.

Plaintiff also states that SPL and Local 668 cannot moot her claims by unilaterally offering her the relief she demands. She cites to Campbell-Ewald v. Gomez, 136 S.Ct. 663, 672 (2016), in which she states the Supreme Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." Plaintiff states that she has not accepted Local 668's offer and, that even though her post-resignation dues were refunded in the amount of $55.18 and put in her bank account via direct deposit, she has not cashed the $11.81 refund check that the union later mailed to her. (*See* Doc. 72,

¶11). She further states that since the full amount of her refund has not been accepted by her and deposited in her account and since this court has not yet entered judgment in her favor in the amount of the union's refund, SPL is precluded from asserting that her claim for retrospective relief is moot. (Doc. 93, at 12).

Judicial power under Article III "extends only to cases and controversies." Acosta v. Democratic City Committee, 288 F.Supp.3d 597, 623 (E.D.Pa. 2018) (citation omitted). "A case becomes moot when (1) 'the issues presented are no longer 'live,' or (2) 'the parties lack a legally cognizable interest in the outcome.'" *Id*. (citations omitted). "[A] case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id*. (citations omitted). Further, "[a]n actual controversy does not exist, rendering a case moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Diamond, 2019 WL 2929875, at *15 (citations omitted). "A live controversy exists '[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation.'" *Id*. (citations omitted). Thus, "a court's subject matter jurisdiction depends on the existence of an actual case or controversy." Akers, 376 F.Supp. 3d at 569 (citation omitted).

Declaratory judgment is not meant to adjudicate alleged past unlawful activity. There is no question that plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights. *See* Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009)(Third Circuit held

that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future)(citations omitted). However, plaintiff is not entitled to declaratory relief that any defendant violated her rights in the past as she alleges. *See* Brown v. Fauver, 819 F.2d 395, 399-400 (3d Cir. 1987)(Third Circuit directed district court to dismiss plaintiff's §1983 claim for prospective relief where he "has done nothing more than allege past exposure to unconstitutional state action").

In this case, plaintiff fails to allege any ongoing violations of her constitutional rights and SPL has demonstrated that plaintiff's resignation was accepted by Local 668, deductions for union dues from her paycheck were terminated, and she was given a full refund for the dues that were deducted after her resignation. *See* Diamond, 2019 WL 2929875, at *14 (Court held that plaintiffs' claims for declaratory and injunctive relief with respect to the constitutionality of fair-share fees were moot due to the Janus decision and since the union defendants showed that they complied with Janus by asking the school district employers to immediately stop fair-share-fee payroll deductions and to refund any fees paid by employees after Janus.); *see also* Akers, 376 F.Supp. 3d at 571-72 (citations omitted). In Diamond, 2019 WL 2929875, at *15, the court held that "[b]ased on Janus and Union Defendants' conduct, there is simply no live controversy regarding the constitutionality of collecting fair-share fees", and that "there is no continuing conduct for this

Court to enjoin or declare unconstitutional." (citing <u>Hartnett v. Pa. State Educ.</u> <u>Ass'n</u>, ––– F.Supp.3d –––, 2019 WL 2160404, at \*6-7 (M.D.Pa. May 17, 2019) ("finding comparable claims for declaratory and injunctive relief moot post-<u>Janus</u> because the '[p]laintiffs face no realistic possibility that they will be subject to the unlawful collection of 'fair share' fees'"); (collection of other cases omitted); *see also* <u>Molina</u>, 2019 WL 3240170, \*9 (court dismissed plaintiff's claim for retrospective monetary relief seeking post-resignation dues since this claim was rendered moot by the refund provided by defendants despite the fact that plaintiff stated he did not yet deposit the refund payment).

Additionally, defendants argue that plaintiff lacks standing to obtain prospective relief for herself and for other union members regarding the future deduction from her paycheck for union dues since she fails to show that she is likely to suffer future injury from their conduct. As stated, plaintiff has resigned her membership from Local 668 and she is no longer paying any dues to this union. Defendants have shown that they fully complied with plaintiff's wishes to no longer be a union member. The SAC does not allege ongoing violations of plaintiff's constitutional rights by either SPL or Local 668. It contains only allegations of past violations of her rights by these defendants. Nor does plaintiff allege that she has any intention to rejoin Local 668 in the future. Plaintiff also fails to allege that there is a substantial likelihood that she will suffer injury in the future if the court does not issue declaratory judgment. Rather, all of the unlawful conduct she attributes to SPL

and Local 668 occurred in the past.

Further, SPL and Local 668 have shown that they have change their conduct towards agency shop employees based on Janus (*see* Doc. 72), and, "[i]t is therefore 'absolutely clear' that [these defendants'] wrongful behavior 'could not reasonably be expected to recur.'" Diamond, 2019 WL 2929875 at *19 (citation omitted).

Insofar as plaintiff seeks prospective relief enjoying SPL and Local 668 from collecting any fees or from taking pay deductions for dues post-Janus, this claim is moot. *See* Babb, 378 F.Supp.3d at 870-71 ("This Court has twice held that claims for prospective relief to prevent the collection of agency fees post-Janus are moot [since defendants indicated they would no longer enforce state law that permitted such fees and showed their compliance with Janus].") (citing Yohn v. California Teachers Ass'n, 2018 WL 5264076 (C.D.Cal. Sept. 28, 2018); Babb v. California Teachers Ass'n, 2018 WL 7501267 (C.D.Cal. Dec. 7, 2018)). In Babb, *id*. at 871, the court also indicated that "every other district court to consider this issue has found claims for prospective relief moot after Janus." (citing Cook v. Brown, 364 F.Supp.3d 1184, 1188 (D.Or. 2019); Carey v. Inslee, 364 F.Supp.3d 1220, 1225–27 (W.D.Wash. 2019); Danielson v. Inslee, 345 F.Supp.3d 1336, 1339–40 (W.D. Wash. 2018)). This court finds the decision in Babb, 378 F.Supp.3d at 870-71, to be persuasive as well as the cases cited in Babb which found claims similar to plaintiff LaSpina's claim for prospective relief to be moot after Janus. *See*

*also* Diamond, *supra*; Akers, *supra*; Molina, 2019 WL 3240170, \*8 (court found that it did not have subject matter jurisdiction over plaintiff's claims for prospective declaratory and injunctive relief because plaintiff lacked standing regarding these claims since his dues were already refunded, he was no longer a member of defendant union and, he was no longer employed with the County); Wholean v. CSEA SEIU Local 2001, 2019 WL 1873021169 (D.Conn. April 26, 2019); Seager v. United Teachers Los Angeles, 2019 WL 3822001(C.D.Ca. Aug. 14, 2019).

The court also finds plaintiff's reliance on Campbell–Ewald Co. v. Gomez, ―― U.S. ――, 136 S.Ct. 663 (2016), to be misplaced. As the court in Bais Yaakov of Spring Valley v. Educational Testing Service, 251 F.Supp.3d 724, 730 (S.D.N.Y. 2017), explained:

> In Campbell–Ewald, a plaintiff had brought a class action suit alleging that the defendant had violated the TCPA by sending Navy-recruiting text messages to individuals who had not consented to receipt of such messages. 136 S.Ct. at 667. Prior to the deadline for the plaintiff to file a motion for class certification, the defendant filed an offer of judgment pursuant to Rule 68, offering to pay the plaintiff the full statutory damages to which he was individually entitled. *Id.* at 667–68. The plaintiff rejected the offer, and the defendant thereafter moved to dismiss the case for lack of subject matter jurisdiction, arguing that the offer of complete relief mooted the plaintiff's individual claim and therefore the entire case. *See id.* at 668.

"The Supreme Court [in Campbell-Ewald] held that the plaintiff's complaint 'was not effaced by [the defendant's] unaccepted offer to satisfy his individual claim'", and "reasoned that a plaintiff who rejects an offer of

judgment retains an interest in the lawsuit, because '[a]n unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect.'" *Id*. (internal citations omitted). Thus, the Supreme Court held that "'[u]nder basic principles of contract law, [the defendant's] settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy.'" *Id*. (citation omitted). The Court "[did] not, ... decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id*. (citation omitted).

Thus, in Campbell-Ewald, the Supreme Court found that since the unaccepted settlement offer was essentially withdrawn when it expired and plaintiff did not obtain his requested relief, a live controversy was still present in the case and the court retained jurisdiction over it. Campbell-Ewald, 136 S.Ct. at 670-72.

Defendants distinguish Campbell-Ewald from the instant case since it involved a case with an unaccepted settlement offer. They state that "Local 668 has not acted under Rule 68 or made a mere offer of settlement but has instead actually paid to [plaintiff] the entire amount she claims was wrongfully deducted from her paycheck", and that "[u]nlike a Rule 68 offer of settlement, this refund [was not withdrawn] did not require [plaintiff's] acceptance or ask [her] to make any reciprocal commitments." (Doc. 94 at 11).

The court finds that in our case there was no unaccepted Rule 68 offer

by defendants and plaintiff LaSpina has received a full recovery of all of the dues deducted from her pay after her resignation from Local 668. Thus, the facts of plaintiff LaSpina's case are different from the facts of the <u>Campbell-Ewald</u> case and our plaintiff was not left "emptyhanded".[8] *See* <u>Sands v. NLRB</u>, 825 F.3d 778, 782 (D.C.Cir. 2016) (court found that a former union member '[w]ith a refund of her dues in hand ... can no longer claim her payment of dues as the basis for her interest in this matter.").

Further it is not sufficient that plaintiff still has a request for attorneys' fees in Count 2 for purposes of having a live controversy with respect to her claim since an "interest in attorneys' fees does not save a matter from mootness." <u>Ivy Club v. Edwards</u>, 943 F.2d 270, 276 (3d Cir. 1991) (citation omitted). In <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 480 (1990), the Supreme Court held that plaintiff's interest in attorneys' fees, is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." (citation omitted).

Moreover, the court finds that none of the exceptions to the mootness doctrine apply in this case, including the exception were the conduct is capable of repetition yet evades review, since plaintiff has not established that

---

[8]It is of no moment that plaintiff has not yet cashed the dues refund check Local 668 sent her in the amount of $11.81 since under Pennsylvania law "a check is a negotiable instrument ... akin to a cash payment." <u>Sarver v. Capital Recovery Assoc., Inc.</u>, 951 F.Supp. 550, 553 (E.D.Pa. 1996). *See also* <u>Molina</u>, *supra*; <u>Krevsky v. Equifax Check Services, Inc.</u>, 85 F.Supp.2d 479, 481 (M.D.Pa. 2000) ("payment by check is equivalent to paying with cash").

"(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *See* Acosta, 288 F.Supp.3d at 623 (citations omitted). The cessation of dues from plaintiff's pay has been in effect since Local 668 advised SPL that plaintiff resigned and it directed the deductions to stop. There is no claim that the deductions were re-started at any time or that they will likely resume sometime in the future. In fact, SPL will not make any further deductions for union dues without written authorization from plaintiff. (*See* Doc. 72, ¶'s 5 & 8, 13; Doc. 72-1, CBA).

Defendants also contend that the voluntary cessation exception to the mootness doctrine is not applicable. Defendants maintain that for voluntary cessation doctrine to apply, a defendant's voluntary cessation must be due to plaintiff's lawsuit, and that since they have shown Local 668 directed SPL to stop deducting dues from plaintiff's pay before the union was aware of plaintiff's lawsuit, they did not act because of her suit. (*See* Doc. 72, ¶'s 8, 9 & 12, Local 668 became aware of plaintiff's lawsuit November 19, 2018).

"The voluntary cessation doctrine refers to situations that do not deprive a federal court of its power to hear and determine a case, even when a defendant has voluntarily ceased the challenged practice, because the allegedly wrongful behavior could reasonably be expected to recur." Akers, 376 F.Supp. 3d at 571 n. 6 (citation omitted).

As the court in <u>Molina</u>, 2019 WL 3240170, *6, explained:

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). This is so because "if it did, the courts would be compelled to leave '[t]he defendant...free to return to his old ways.'" <u>Id</u>. at 289 & n.10, 102 S.Ct. 1070 (citations omitted). The Supreme Court has announced a "stringent" standard for "determining whether a case has been mooted by the defendant's voluntary conduct." <u>See</u> <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Specifically, the Supreme Court has stated that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." <u>Id</u>. (internal quotation omitted).

<u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 133 S.Ct. 721, 727 (2013) (A defendant "cannot automatically moot a case simply by ending its unlawful conduct **once sued**.") (emphasis added).

In this case, as discussed, defendants have shown that their allegedly unlawful conduct "could not reasonably be expected to recur", *id*., and there is absolutely no risk that plaintiff will be subjected to any deduction for dues in the future without her express consent. As Local 668 states, (Doc. 71 at 21), in its brief "[it] cannot make any further deductions unilaterally" because:

The collective bargaining agreement between Local 668 and [SPL] provides that the Library's "obligation to make deductions shall terminate automatically upon timely receipt of revocations." Lukert Decl. Exh. A. Local 668 has notified [SPL] of [plaintiff's] revocation of her dues deduction authorization, and [SPL] will only renew deductions upon receiving a "written authorization voluntarily executed by [plaintiff]." [Doc. 72] paras. 5, 8 & Exh. A.

Defendants have also shown that Local 668 directed SPL to stop

deducting dues from plaintiff's pay before it learned of her lawsuit, and that SPL has not received any further dues from plaintiff since the October 26, 2018 payroll period. (Doc. 72, ¶ 8). *See* <u>ACLU of Mass. v. U.S. Conf. of Catholic Bishops</u>, 705 F.3d 44, 55 (1st Cir. 2013) ("The voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation.") (citations omitted).

Nor is it relevant, as plaintiff contends, that she did not receive her refund until after she filed her original complaint since she did not have standing regarding this claim for prospective relief and it was moot before she filed her action when Local 668 processed plaintiff's resignation, ended her dues deduction, and directed SPL to stop the dues deduction from her pay. "Standing requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for each claim he seeks to press.'" <u>Neale</u>, 794 F.3d at 359 (citation omitted). Thus, the relevant time is when defendants stopped the deductions of dues from plaintiff's pay and not when she received her refund since defendants ceased their alleged unlawful conduct before plaintiff's lawsuit was initiated and not to evade her lawsuit. (Id.). *See* <u>Rendell v. Rumsfeld</u>, 484 F.3d 236, 243 (3d Cir. 2007) ("The purpose of [the "capable of repetition"] exception [to the mootness doctrine] is to prevent defendants from 'forever ... avoid[ing] judicial review simply by ceasing the challenged practice, only to resume it after the case [is] dismissed.'").

Moreover, plaintiff cannot proceed with her claim in Count 2 seeking to enjoin the payment of post-resignation dues on behalf of other putative class members who have resigned the union, as she suggests if her claim is found to be moot, since her claim in Count 2 is for individual relief. In any event, since plaintiff's individual claim is moot, any such claim on behalf of a proposed class would similarly be moot. *See* Campbell–Ewald, 136 S.Ct. at 672 ( "While a class lacks independent status until certified, a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted."). Here, plaintiff, a would-be class representative, does not have a live claim of her own and thus there is no claim for a proposed class.

Thus, all of plaintiff's requests for declaratory judgment and injunctive relief in Count 2 of her SAC against Local 668 and SPL are moot and, they will be dismissed with prejudice.

Finally, plaintiff lacks standing to proceed with her claim in Count 3 against Local 668 and SPL. In Count 3, plaintiff seeks the court to require defendants to obtain post-Janus authorizations to deduct union dues from the paychecks of existing union members or to provide them with additional information before their authorizations can be obtained. Plaintiff requests the court to declare Local 668's ongoing receipt of voluntary membership dues by current union members unconstitutional unless Local 668 receives post-Janus dues deduction authorizations from each union member, and to enjoin Local

668 from collecting any dues until each union member sign a new authorization form that contains specific language proposed by plaintiff. (Doc. 66, ¶ 53(l), (m)).

The court finds that Count 3 must be dismissed since plaintiff is not suffering and will not suffer in the future any injury due to defendants' alleged conduct. Plaintiff is no longer a member of Local 668. Plaintiff no longer has standing to request that SPL and Local 668 obtain post-Janus authorizations from other employees and members of the union and, to request that the other employees be advised of their right to resign from the union and withhold the payments of dues to the union, since she resigned her membership in August 2018 and has no intention of rejoining the union. Further, as indicated, the CBA between Local 668 and SPL does not allow SPL to deduct any future dues from plaintiff's pay without her written authorization, and plaintiff does not allege that she has any intention of giving such authorization. (Doc. 72, ¶'s 5, 8 & Doc. 72-1; Doc. 66, ¶ 13). Thus, she has no injury that she is suffering from or will suffer from if SPL and Local 668 do not obtain the authorizations or waivers from current union members or future members. The law is clear that plaintiff must have standing regarding each of her claims throughout the case, and that "if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot." Molina, 2019 WL 3240170, *5 (quoting Gayle v. Warden Monmouth Cty. Corr.

Inst., 838 F.3d 297, 303 (3d Cir. 2016)).

Further, even though plaintiff alleges that she was previously not aware of her right not to join the union when she began working for SPL and that SPL failed to inform her of this right, plaintiff was subsequently well aware of her right not to join Local 668, before she filed her action on October 18, 2018, since she sent the union her resignation on August 21, 2018. This demonstrates that plaintiff's request for relief in Count 3 does not redress any injury from which she is currently suffering or will likely suffer from in the future. *See* McNair, 672 F.3d at 223-25.

Additionally, as explained above with respect to Count 2, the voluntary cessation exception to mootness does not apply to Count 3 since defendants have shown that they did not temporarily cease their challenged conduct only to avoid judicial review. *See* Rendell, 484 F.3d at 243.

Thus, plaintiff lacks standing with respect to the relief she seeks in Count 3 and it will be dismissed against Local 668 and SPL under Rule 12(b)(1). *See* Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

As such, the motions to dismiss of Local 668 and SPL under Rule 12(b)(1) will be granted as to Counts 1-3. Plaintiff's federal claims against Local 668 and SPL in her SAC will be dismissed with prejudice since plaintiff has already filed three complaints in this case and, it would be futile, as

discussed above, to allow her to file another complaint against Local 668 and SPL.

Finally, considering judicial economy, convenience and fairness to the litigants, the district court in its discretion is permitted to decline the exercise of supplemental jurisdiction over state law claims if the court has dismissed all of the claims over which it had original jurisdiction. Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) (citations omitted). *See* Patel v. Meridian Health System, Inc., 666 Fed.Appx. 133, 136 (3d Cir. 2016) ("A district court 'may decline to exercise supplemental jurisdiction' over state law claims if it 'has dismissed all claims over which it has original jurisdiction[,]' unless considerations of judicial economy, convenience, or fairness to the parties provide an affirmative justification for exercising supplemental jurisdiction.") (citing Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). The court has made the appropriate considerations and finds no extraordinary circumstances exist in this case to exercise supplemental jurisdiction over plaintiff's remaining Pennsylvania state law claims against Local 668 and SPL. Since plaintiff's federal claims over which this court had original jurisdiction shall not be permitted to proceed to trial against Local 668 and SPL, the court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims against union defendants. *Id.; see also* 28 U.S.C. §1367(c)(3); Verdecchia v. Prozan, 274 F.Supp.2d 712, 728 (W.D. Pa. 2003); Akers, 376 F.Supp. 3d at 574.

Additionally, since plaintiff lacks standing to assert federal claims against Local 668 and SPL, the absence of federal jurisdiction over her federal claims deprives the court from exercising supplemental jurisdiction over her state law claims against these defendants. Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 299-300 (3d Cir. 2003) (citations omitted).

As such, plaintiff's state law claims against Local 668 and SPL shall be dismissed without prejudice.[9] Kach, 589 F.3d at 650 ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits.") (citation omitted).

## III.    CONCLUSION

Based on the foregoing reasons, the court will **GRANT** the Rule 12(b)(1) motions to dismiss plaintiff's SAC, (Doc. 66), filed by Local 668, (Doc. 70), and by SPL, (Doc. 88), with respect to her federal claims against them, and plaintiff's federal claims against Local 668 and SPL shall be **DISMISSED WITH PREJUDICE**. Plaintiff's state laws claims against Local 668 and SPL

---

[9]Local 668 and SPL also argue that plaintiff's state law claims are preempted by the exclusive jurisdiction of the Pennsylvania Labor Relations Board ("PLRB"), and since her allegations that they interfered with her right to refrain from joining the union constitute unfair labor practices under Pennsylvania law. (Citing 43 Pa.C.S.A. §§1101.401, 1101.1201, 1101.1301). However, since the court declines to exercise supplemental jurisdiction over plaintiff's state law claims against Local 668 and SPL, it does not address the preemption issue.

shall be **DISMISSED WITHOUT PREJUDICE**. The claims against defendant Lackawanna County Library System contained in the plaintiff's SAC, **(Doc. 66)**, are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed.R.Civ.P. 41(a)(1)(A)(I). Further, since all of the defendants named in the plaintiff's SAC have been dismissed, this case will be **CLOSED**. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 30, 2019**

18-2018-03.wpd